# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| United States of America, | ) Case No: 3:05CR25/LAC |
| Plaintiff, | ) |
| v. | ) |
| Ward Franklin DEAN, | ) |
| Defendant. | ) |

### Defendant's Opposition to Faretta Hearing

Ward Dean (hereinafter "Dean"), defendant herein, submits his Opposition to Faretta Hearing, noticed by the court, *sua sponte*. On September 16, 2005, Dean filed a *Notice of Appeal* from the Court's *Order* of September 7, 2005, compelling him to proceed *pro se* in violation of his Sixth Amendment right. (Doc. 72) The Clerk of the Court transmitted to the Clerk, U.S. Court of Appeals for the Eleventh Circuit, a certified copy of the appeal notice, docket entries, and the Order appealed (Doc. 65) on September 20, 2005. (Doc. 73)

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

2005 SEP 26 PM 4: 03

FILED

## The Court Is Without Jurisdiction To Proceed

The Federal Courts of Appeal have acknowledged the Supreme Court's recognition that a limited appeal exception exists for certain collateral orders that do not terminate an action, <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949), and that certain District Court Orders implicate "important rights which would be 'lost, probably irreparably,' if review had to await final judgment... ." <u>Abney v. United States</u>, 431 U.S. 651, 658, 52 L. Ed. 2d 651, 97 S. Ct. 2034 (1977). For example, the Tenth Circuit has observed that the actual act of going to trial under a pretextual prosecution has a chilling effect on protected expression and the right asserted is a "right not to be tried," <u>United States v. P.H.E., Inc.</u>, 965 F.2d 848, 853-55 (10th Cir. 1992) (citing <u>United States v. Hollywood Motor Car</u>, 458 U.S. 263, 73 L. Ed. 2d 754, 102 S. Ct. 3081 (1982); <u>United States v. MacDonald</u>, 435 U.S. 850, 860-61, 56 L. Ed. 2d 18, 98 S. Ct. 1547 (1978)). Further, the Tenth Circuit alluded to its teachings in <u>Bender v. Clark</u>, 744 F.2d 1424 (10th Cir.1984), where it recognized that "the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." <u>Id</u>. at 1427. See also <u>Richardson v. United States</u>, 468 U.S. 317, 321-22, 82 L. Ed. 2d 242, 104 S. Ct. 3081 (1984) (following <u>Abney</u>).

Dean also asserts a right not to be tried without the effective assistance of counsel as mandated by the Sixth Amendment,[1] "which must be upheld prior to trial if it is to be enjoyed at all." *MacDonald*, 435 U.S. at 861. The right "not to be tried" (without effective assistance of counsel) is a "right effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 57 L. Ed. 2d 351, 98 S. Ct. 2454 (1978). See also *DiBella v. United States*, 369 U.S. 121, 126 (1962) ("immediate appeal has been allowed from an order recognized as collateral to the principal litigation ... when the practical effect of the order will be irreparable by any subsequent appeal" (internal citation omitted)).

These exceptions fit within a general public policy permitting appeals in criminal cases where rights of exceptional importance are at stake, and where resolution of those rights cannot wait until the close of criminal proceedings. See, e.g., *Helstoski v. Meanor*, 442 U.S. 500, 61 L. Ed. 2d 30, 99 S. Ct. 2445 (1979) (permitting immediate appeal of criminal defendant's motion to dismiss under the Speech or Debate Clause); *Abney, supra* (permitting immediate appeal of criminal defendant's motion to dismiss on double jeopardy grounds); *Stack v. Boyle*, 342 U.S. 1, 96 L. Ed. 3, 72 S. Ct. 1 (1951) (permitting immediate appeal of criminal defendant's motion to reduce bail); see also 18 U.S.C. § 3731 (permitting

---

[1] The Sixth Amendment to the United States Constitution provides in part that "the accused shall enjoy the right ... to have the assistance of Counsel for his defense" in all criminal prosecutions. U.S. Const. Amend. VI.

3

prosecution to appeal immediately order dismissing indictment, granting motion to suppress, or granting motion for return of property).

Dean argues that his appeal of this Sixth Amendment issue deprives this Court of jurisdiction until after the appeal. Further, this court lacks constitutional authority to proceed as it has without affording Dean counsel of his choice. This is one of those questions of exceptional importance that must be resolved as soon as possible, without waiting for the end of what may be interminable criminal proceedings. See, e.g., <u>Fort Wayne Books, Inc. v. Indiana</u>, 489 U.S. 46, 55, 103 L. Ed. 2d 34, 109 S. Ct. 916 (1992) ("Adjudicating the proper scope of First Amendment protections has often been recognized by this Court as a 'federal policy' that merits application of an exception to the general finality rule."); <u>United States v. P.H.E., Inc.</u>, 965 F.2d 848, 857 (10th Cir. 1992) ("Federal courts have asserted jurisdiction in a number of contexts involving non-final orders, in which the proceedings complained of infringed upon" constitutional rights).

28 U.S.C. § 1291 grants the federal courts of appeals jurisdiction to review "all final decisions of the district courts," both civil and criminal. However, that section includes non-final orders when the proceedings infringe constitutional rights such as Dean's constitutional right to the effective assistance of counsel. For example, the pretrial denial of a motion to dismiss an indictment on double jeopardy grounds is obviously not "final" since it does not terminate the criminal

proceedings in the district court. Nonetheless, the Courts of Appeal have held that § 1291 does not bar an immediate appeal from such a pretrial order. <u>United States v. Barket</u>, 530 F. 2d 181 (8th Cir. 1975), <u>cert. denied</u>, 429 U.S. 917 (1976); <u>United States v. Beckerman</u>, 516 F. 2d 905 (2nd Cir. 1975); <u>United States v. Lansdown</u>, 460 F. 2d 164 (4th Cir. 1972). In reaching this conclusion, those courts have taken the position that such pretrial orders fall within the so-called "collateral order" exception to the final-judgment rule first announced in <u>Cohen, supra</u>, and are thus "final decisions" within the meaning of § 1291. This was made conclusive by the Supreme Court in <u>Abney</u> and <u>Richardson</u>.

<u>Cohen</u> was a shareholder's derivative civil action in which federal jurisdiction rested on the diverse citizenship of the parties. Prior to trial, a question arose over whether a state statute requiring the plaintiff shareholder to post security for the costs of litigation applied in the federal court. After the District Court denied its motion to require such security, the corporate defendant sought immediate appellate review of the ruling in the Court of Appeals. That court reversed and ordered that security be posted. Thereafter, the Supreme Court held that the Court of Appeals had jurisdiction under § 1291 to entertain an appeal from the District Court's pretrial order.

In holding the pretrial order was a "final decision" for purposes of § 1291, the Court recognized that § 1291 did not uniformly limit appellate jurisdiction to

"those final judgments which terminate an action." Cohen, 337 U.S. at 545; Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171 (1974). Rather as Mr. Justice Jackson, the author of Cohen, later pointed out:

> [I]t is a final decision that Congress has made reviewable... While a final judgment always is a final decision, there are instances in which a final decision is not a final judgment. Stack v. Boyle, 342 U.S. 1, 12 (1951) (separate opinion).

The term "final decision", the Court held, was to be given a "practical rather than a technical construction." Cohen, supra, at 546. In giving it such a construction, the Court identified several factors which, in its view, rendered the District Court's order a "final decision" within the statute's meaning. First, the District Court's order had fully disposed of the question of the state security statute's applicability in federal court; in no sense, did it leave the matter "open, unfinished or inconclusive." Second, the decision was not simply a "step toward final disposition of the merits of the case [which would] be merged in final judgment;" rather, it resolved an issue completely collateral to the cause of action asserted. Finally, the decision had involved an important right which would be "lost, probably irreparably," if review had to await final judgment; hence, to be effective, appellate review in that special, limited setting had to be immediate. The Court concluded:

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause

6

itself to require that appellate consideration be deferred until the whole case is adjudicated.

Cohen, supra at 546.

Although the Court's pretrial order denying Dean his Sixth Amendment right to effective assistance of counsel of his choice is not a final judgment traditionally considered indispensable to appellate review, analogous Supreme Court precedents have concluded that such orders fall within the "small class of cases" that Cohen has placed beyond the confines of the final-judgment rule. In the first place, there can be no doubt that such orders constitute a complete, formal and, in the trial court, final rejection of a criminal defendant's absolute right to the assistance of counsel. There are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred by the Sixth Amendment's guarantee of the assistance of counsel. Hence, Cohen's threshold requirement of a fully consummated decision is satisfied.

The very nature of Dean's claim of his absolute right to the assistance of counsel is such that it is collateral to, and separable from, the principal issue in Dean's impending criminal trial, i.e., whether or not he is guilty of the offenses charged. In arguing that the Court has no jurisdiction to proceed without complying with the Sixth Amendment, Dean makes no challenge whatsoever to the merits of the charges against him. Dean is contesting the very authority of the Government to hale him into court to face trial in violation of his Sixth Amend-

ment right. *Menna v. New York*, 423 U.S. 61 (1975); *Blackledge v. Perry*, 417 U.S. 21, 30 (1974); *Robinson v. Neil*, 409 U.S. 505, 509 (1973).

Dean's Sixth Amendment issue is completely independent of Dean's guilt or innocence. In the double jeopardy context, for example, the Supreme Court explicitly recognized that fact in *Harris v. Washington*, 404 U.S. 55 (1971), where the Court held that a State Supreme Court's rejection of an accused's pretrial plea of former jeopardy constituted a "final" order for purposes of appellate jurisdiction under 28 U.S.C. § 1257. See also *Turner v. Arkansas*, 407 U.S. 366 (1972); *Colombo v. New York*, 405 U.S. 9 (1972).

The matters embraced in the trial court's pretrial orders here are collateral to the criminal prosecution itself in the sense that they will not "affect, or ... be affected by, decision of the merits of this case." *Cohen*, 337 U.S. at 546. See also *Breed v. Jones*, 421 U.S. 519, 529-530 (1975); *Serfass v. United States*, 420 U.S. 377, 387-388 (1975).

The Sixth Amendment's protection, against a criminal trial (and potential immediate incarceration if convicted) without effective assistance of counsel, would be lost if Dean were forced to "run the gauntlet" before an appeal could be taken. Even if Dean is acquitted, or, if convicted, has his conviction ultimately reversed on these grounds, Dean would still have been forced to endure a trial the Sixth Amendment and Constitution were designed to prohibit.

Consequently, if a criminal defendant is to avoid exposure to a criminal trial without the assistance of counsel for his defense, and thereby enjoy the full protection of the Sixth Amendment, his challenge to the court's order must be reviewable before that trial occurs. A trial court must suspend its proceedings once a notice of appeal is filed. See, e.g., <u>Stewart v. Donges</u>, 915 F.2d 572, 577 (10th Cir. 1990) ("...the trial is automatically put off... ."; <u>United States v. Genser</u>, 710 F.2d 1426 (10TH Cir. 1983) (same); <u>United States v. Hines</u>, 689 F.2d 934 (10TH Cir. 1982) (same); <u>United States v. Leppo</u>, 634 F.2d 101, 105 (3RD Cir. 1980) (same). See also <u>U.S. v. Lamere</u>, 951 F.2d 1106, 1108-09 (9th Cir. 1991), explaining the "dual jurisdiction" rule.

**Plaintiff's Pleadings Are Of No Help to The Court.**

Plaintiff filed a response to Dean's motion to vacate/reconsider the Court's Order of September 7, 2005, and the Court scheduled a <u>Faretta</u> Hearing (<u>Faretta v. California</u> (1975) 422 U.S. 806) for October 3, 2005, at 10:00 a.m. (an hour after the court had order Dean's trial to begin). At best, the authorities cited by plaintiff are not on point with the facts herein, and perhaps invite the court to commit reversible error.

<u>**United States' authorities distinguished.**</u>

a. <u>United States v. Fowler</u>, 605 F.2d 181 (5th Cir. 1979).

Fowler was arraigned during March, 1978, and the trial set for October

1978, which is roughly the same interval as Dean. Fowler, however, never retained counsel, and he made no attempts to hire an attorney until eight (8) days prior to trial.

Dean, on the other hand, after numerous admonitions from the court to obtain counsel, did retain counsel. However, Dean's retained counsel was forced to withdraw from the case due to the actions of the plaintiff. Dean diligently has sought and is seeking to find and retain another competent attorney who can assist him, unfortunately so far without success.

Dean is not using the search for counsel as a means of "delaying or trifling with the Court." He is conducting the search as a means to preserve his right to a fair and just trial, by trying to locate an attorney who understands the complexities of tax law and of Dean's defense.

One attorney, Mr. Barry W. Beroset, sent Dean a letter that was included as *Exhibit A* to Dean's *Third Notice to Court of Efforts to Secure Legal Representation*. Mr. Beroset's time necessary to prepare for trial would be roughly three (3) months. *Exhibit B* was a letter from Mr. Frederick Helmsing, who seemed very qualified, but required a small fortune, $250,000, as a retainer and specified a rate of $375 per hour. Dean simply does not have those type of funds. At the specified rate, the retainer is the equivalent of approximately 670 hours. Obviously, Mr. Helmsing also anticipated several months to prepare for a trial.

b. <u>United States v. McLeod</u>, 53 F.3d 322, 325 (11th Cir. 1995).

McLeod exhibited disruptive behavior in court during the entire proceeding. He refused to take an oath, and he mistreated two successive counsels who were assigned to represent him. The <u>McLeod</u> Court concluded that he therefore "forfeited any right [to counsel] that he may have had due to his pervasive misconduct." McLeod's forfeiture of his right to counsel was held to be justified due to his behavior.

Dean's behavior, on the other hand, has been courteous and cooperative throughout all of these proceedings, even after plaintiff's completely unnecessary life-threatening, guns-drawn, arrest of defendant (and frightening, and coarse treatment, of Dean's wife and friend) after the defendant left this courthouse.

c. <u>United States v. Casey</u>, 480 F.2d 151, 152 (5th Cir. 1973).

<u>Casey</u> held that the facts of a particular case determine whether or not the denial of a request for continuance to obtain counsel is a violation of a person's Sixth Amendment guarantee. A request for continuance should not be used as "a device to manipulate or subvert the orderly procedure of the courts or the fair administration of justice."

The plaintiff, the United States government, has taken more than three years, with all its vast resources and power, to prepare its case against the defendant. The defendant has had less than six months to prepare his defense and more than half of that has been spent searching for a replacement counsel. The very need to find a replacement counsel

has been because of the actions of the plaintiff in taking away defendant's retained counsel of choice. It is the plaintiff which has created the instant situation.

d. *United States v. Koblitz*, 803 F.2d 1523, 1529 & n. 15 (11th Cir. 1986).

*Koblitz* – citing *Linton v. Perini*, 656 F. 2d 207, 209 (6th Cir. 1981) – held that a trial judge must be mindful that "acting in the name of calendar control [he] cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney [the client] has selected." Citing *U.S. v Cox*, 580 F.2d 317, 321 (8th Cir. 1978), the *Klobitz* Court said the Sixth Amendment right to counsel is solely the accused's. "Defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice."

In the *Klobitz* case, there were multiple defendants who might have been jeopardized by the delay. There are no other defendants in Dean's case. The government has been actively investigating Dean for at least three years, and it has known about Dean's circumstances for nearly ten years. Dean has formally waived his right to a "speedy trial," and United States will not be prejudiced by a comparatively short delay until Dean can locate a competent attorney of his choice to provide him effective assistance of counsel.

**Dean does not intend to defend himself.**

Generally, a *Faretta* Hearing is held when an accused wants to represent himself. As explained below, Dean does not intend to represent himself. Dean

had been repeatedly admonished by the plaintiff and the Court that he should retain an attorney, and agrees with them that he needs the assistance of counsel. Dean has only a very rudimentary knowledge of the Local Rules of the Court; virtually no knowledge of the Rules of Evidence; limited knowledge of the Federal Rules of Criminal Procedure; no experience in presenting evidence; no experience in cross-examining witnesses; no knowledge of the reasons for objections to anything the prosecution might present; and no experience conducting a criminal trial.

Reflecting upon Dean's loss of his counsel of choice, Mr. Cowan, it seems the Court could have and should have protected Dean's Sixth Amendment right, *sua sponte,* by prohibiting plaintiff from calling Dean's retained legal counsel, Mr. Tracy Cowan, to active duty until after trial of this matter. Alternatively, the Court could have and should have granted Mr. Cowan's request for a continuance until he returned from active duty. Those actions were within the authority of the Court, not Dean. In summary, the plaintiff caused this problem, not Dean. Dean had no authority to restrain plaintiff, but the Court did.

This Court has already made the determination that, although allowed, Dean was, and is, not qualified to represent himself. The Court has clearly demonstrated its opinion that Dean is far from competent to represent himself, by repeatedly admonishing him to obtain counsel. Dean realized the Court was

right; that he simply does not have the knowledge and experience to represent himself. That is why he searched for and found Mr. Cowan.

Then, after Dean followed the Court's admonitions and engaged the services of an attorney (and paid him a substantial retainer), plaintiff, through its actions, denied Dean his counsel of choice. Then, this Court failed to exercise its inherent power to prevent the plaintiff from denying Dean his counsel; or, alternatively, continuing this case until his counsel returned from active duty; either of which would have protected Dean's Sixth Amendment rights.

Dean knows no factual or legal basis for this Court to schedule a *Faretta* hearing. Dean does not want to represent himself, and he clearly is incompetent to do so. Is it possible the Court intends to hold a specious *Faretta* hearing? After plaintiff and the Court have spent so much time admonishing Dean he is not capable of defending himself, does the court now intend to find that Dean *is* competent to conduct his own trial *pro se*?

Dean respectfully submits that the Court has been divested of jurisdiction when his *Notice of Appeal* was filed on September 16, 2005, and it was transmitted to the Eleventh Circuit on September 20, 2005. Dean is entitled to counsel of his choice, which he had in fact obtained. Through no fault of his own and completely out of Dean's control, Plaintiff deprived Dean of his right to counsel, and the Court sat idly by while this occurred.

Respectfully Submitted,

Ward Dean, M.D.
Commander, USN (Ret)
8799 Burning Tree Road
Pensacola, Florida  32514
850-484-0595

## Certificate of Service

This is to certify that a copy of this **Defendant's Opposition to Faretta Hearing** was sent by first class mail on 26 September, 2005, to AUSA Robert G. Davies at 21 East Garden Street, Suite 400, Pensacola FL 32502

Ward Dean, M.D.