## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                       Case No.3: 05 CR 25 LAC

WARD FRANKLIN DEAN,

    Defendant.

_____/

### DEFENDANT'S BRIEF RE RULE 29 MOTION

Comes now the Defendant, Dr. Ward Franklin Dean, through his undersigned attorneys, and does hereby submit this brief in support of a portion of Dean's Rule 29 motion.

I. Introduction.

Withholding of federal income taxes from wages is governed by 26 U.S.C. §3402, which provides as follows:

> "(a) Requirement of withholding
> "(1) In general
> "Except as otherwise provided in this section, every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the Secretary. Any tables or procedures prescribed under this paragraph shall –

FILED IN OPEN COURT THIS
12/7/05
CLERK U.S. DISTRICT
COURT, NORTHERN DIST. FL.

1

"(A) apply with respect to the amount of wages paid during such periods as the Secretary may prescribe, and

"(B) be in such form, and provide for such amounts to be deducted and withheld, as the Secretary determines to be most appropriate to carry out the purposes of this chapter and to reflect the provisions of chapter 1 applicable to such periods."

Clearly, §3402 mandates no specific amounts of tax to be withheld, and such amounts are to be determined by "tables or computational procedures prescribed by the Secretary". Whatever "tables or computational procedures" that the Secretary prescribes thus implement the command of the statute.

The relevant regulations which implement §3402 are 26 C.F.R. §31.3402(b)-1 ("Percentage method of withholding") and 26 C.F.R. §31.3402(c)-1 ("Wage bracket withholding"):

"Sec. 31.3402(b)-1  Percentage method of withholding.
"With respect to wages paid after April 30, 1975, the amount of tax to be deducted and withheld under the percentage method of withholding shall be determined under the applicable percentage method withholding table contained in Circular E (Employer's Tax Guide) according to the instructions contained therein."

"Sec. 31.3402(c)-1  Wage bracket withholding.
"In general. (1) The employer may elect to use the wage bracket method provided in section 3402(c) instead of the percentage method with respect to any employee. The tax computed under the wage bracket method shall be in lieu of the tax required to be deducted and withheld under section 3402(a). With respect to wages paid after July 13, 1968, the correct amount of withholding shall be determined under the applicable wage bracket withholding table contained in the Circular E (Employer's Tax Guide) issued for use with respect to the period in which such wages are paid."

Pursuant to the regulations quoted immediately above, Circular E implements these regulations, which in turn implements the statutory withholding tax scheme.

This has not always been the case, however. Shortly after enactment of the 1954 Internal Revenue Code, Treasury Decision 6259 (22 Fed.Reg. 8433 (Oct. 26, 1957), 1957-2 Cum.Bull. 645) was adopted and the actual withholding rates ("tables or computational procedures") were contained in charts within the regulations. About 8 years later, Treasury Decision 6860 (30 Fed.Reg. 13937 (Nov. 4, 1965), 1965-2 Cum.Bull. 399) replaced Treasury Decision 6259, and some 6 years thereafter, Treasury Decision 7115 (36 Fed.Reg. 9201 (May 21, 1971), 1971-1 Cum.Bull. 292) replaced Treasury Decision 6860. These regulations contained charts to calculate the amount of wage withholding.

But in 1983, Treasury Decision 7915 (48 Fed.Reg. 44073 (Sept. 27, 1983), 1983-2 Cum.Bull. 174) eliminated the withholding charts and simply referenced Circular E as a publication controlling employee income tax withholding rates. The problem here, however, is that Circular E has never itself been formally adopted as a regulation and published in the Federal Register pursuant to the requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, et seq. For this reason, the requirements of Circular E are legally void.

II. The Federal Register and Administrative Procedure Acts.

Prior to 1935, much of the internal documentation of federal agencies, as well as regulations promulgated by federal agencies to administer and enforce a variety of federal statutes, was not published and generally made available to the American public, notwithstanding the fact that such regulations purported to

impose mandatory obligations. The first act which commanded the publication of agency requirements which affected the public was the Act of July 26, 1935,[1] which created the Federal Register and compelled federal agencies to publish therein agency regulations (see §§ 4 and 5 of the act). To insure agency compliance with the act's requirements, § 7 provided as follows: "No document required under section 5(a) to be published in the Federal Register shall be valid as against any person who has not had actual knowledge thereof."

An expansion of items required to be published in the Federal Register occurred as a result of the enactment of the Administrative Procedure Act.[2] An important definition within this act was the following contained in §2:

> "(c) Rule and rule making. – 'Rule' means the whole or any part of any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedure, or practice requirements of any agency * * *"

Section 3 of the act commanded that the following types of agency "rules" be published in the Federal Register:

> "(a) Rules. Every agency shall separately state and currently publish in the Federal Register (1) descriptions of its  central and field organization including delegations by the agency of final authority and the established places at which, and methods whereby, the public may secure information or make submittals or requests; (2) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal or informal procedures available as well as forms and instructions as to the scope and contents of all papers, reports, or examinations; and (3) substantive rules adopted as authorized by

---

[1] See 49 Stat. 500, ch. 417.

[2] See Act of June 11, 1946, 60 Stat. 237, ch 324.

> law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law. No person shall in any manner be required to resort to organization or procedure not so published."

Further, the act established a certain method whereby agencies were to publish in the Federal Register proposed and final agency rules and were to accord public hearings in reference thereto. The well known requirement that federal agencies provide adjudication of certain contested matters, subject to judicial review, was established for the first time in this act. Section 9 of the act provided as follows:

> "No sanction shall be imposed or substantive rule or order be issued except within jurisdiction delegated to the agency and as authorized by law."

As amended, the above noted statutes continue their existence today, codified in 5 U.S.C. §§ 551 through 558. These sections mandate that federal agencies publish in the Federal Register a variety of information which affects the rights, duties and obligations of members of the public. A "rule" is defined via §551 as follows:

> "(4) 'rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency * * *"

Section 552 describes in particular detail various items which must be published by federal agencies in the Federal Register:

> "(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public–

"(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

"(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

"(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and content of all papers, reports, or examinations;

"(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

"(E) each amendment, revision or repeal of the foregoing.

"Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register."

Finally, §558(b) prohibits an agency from issuing any substantive rule or order, or imposing any sanctions, outside the jurisdiction delegated to the agency.

Thus, current statutes impose stringent requirements upon federal agencies to publish in the Federal Register substantive rules of general applicability promulgated by them. Any matter required by law to be published, but which is not, is void and cannot be the basis for the imposition of any sanction or penalty against anyone.

III. Necessity for Publication of Agency Rules.

As previously mentioned, a "rule" for publication purposes is certainly an agency requirement imposed on the public which implements or prescribes law. Pursuant to §552(a)(1)(D), "substantive rules of general applicability" must be published in the Federal Register, and an omission in this respect means that the unpublished rule is unenforceable.

Perhaps one of the best examples of the consequence of an agency's failure to publish a substantive rule is *Hotch v. United States*, 212 F.2d 280, 283 (9th Cir. 1954). Here, a federal agency implemented an unpublished regulation which banned commercial fishing in Taku Inlet on the Alaskan coast. Hotch was prosecuted and convicted for violating this regulation and his conviction was at first affirmed on appeal. He filed a petition for rehearing and asserted for the first time on appeal the issue of the non-publication of this substantive rule, and this directly caused a reversal of his conviction. Referring to the APA, the court held:

> "The Acts set up the procedure which must be followed in order for agency rulings to be given the force of law. Unless the prescribed procedures are complied with, the agency (or administrative) rule has not been legally issued, and consequently is ineffective."

The situation was somewhat different in *Gonzalez v. Freeman*, 334 F.2d 570 (D.C.Cir. 1964), where there were no regulations, published or unpublished, which governed the controversy. Here the Gonzalez Corporation, whose officers were several Gonzalez brothers, was debarred from conducting business with the Commodity Credit Corporation, the operative circumstances involving misuse of official inspection certificates by Thomas Gonzalez, who was indicted and plead

7

guilty to a misdemeanor. The corporation and the other Gonzalez brothers filed an action challenging the validity of the agency's order imposing a 5 year debarment. The Court held the agency's action void:

> "The command of the Administrative Procedure Act is not a mere formality. Those who are called upon by the government for a countless variety of goods and services are entitled to have notice of the standards and procedures which regulate these relationships. Neither appellants nor others similarly situated can turn to any official source for guidance as to what acts will precipitate a complaint of misconduct, how charges will be made, met or refuted, and what consequences will flow from misconduct if found.

> "Considerations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based upon the record so made," Id., at 578.

> "[W]e cannot agree that Congress intended to authorize such consequences without regulations establishing standards and procedures and without notice of charges, hearings, and findings pursuant thereto. Absent such procedural regulations and absent notice, hearing and findings in this case, the debarment is invalid," Id., at 579.

An unpublished regulation was at issue in *Berends v. Butz*, 357 F.Supp. 144 (D.Minn. 1973). As a result of severe and excessive rainfall in 15 counties in Minnesota in early 1972, the Secretary of Agriculture declared that such counties were "natural disaster areas" and declared that emergency farm loans would be available until June 30, 1973, and this notice was published in the Federal Register. But, Secretary Butz terminated the emergency loan program by an unpublished order issued December 27, 1972. In a suit instituted by several farmers complaining about the failure of the Department of Agriculture to accept

loan applications, the court held that the loan program could not be terminated by an unpublished order of the Secretary:

> "In adopting the directive of December 27, 1972, defendants did not comply with even one of these mandatory requirements, despite the fact that the directive would have a substantial impact on those regulated, and hence is a 'rule' as contemplated in the statute," Id., at 154.

> "Inherent in these provisions is the concept that the public is entitled to be informed as to the procedures and practices of a government agency, so as to be able to govern their actions accordingly.  The termination of the emergency loan program was without any notice, and was in violation of the provisions of the statute," Id., at 155.

The curtailment of a welfare program's benefits via an unpublished agency manual was the subject of *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055 (1974).  In this case, an Indian named Ruiz, being otherwise eligible for Indian welfare benefits available through a Congressional appropriation, was denied such benefits on the basis of an unpublished agency manual which denied benefits to all Indians but those living "on" Indian reservations. The Court here construed the appropriations act as extending benefits to Indians who lived "on or near" a reservation, and held that the agency manual which limited benefits to only those Indians "on" reservations was void and unenforceable:

> "The Administrative Procedure Act was adopted to provide, inter alia, that administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished ad hoc determinations," 415 U.S., at 232.

> "The conscious choice of the Secretary not to treat this extremely significant eligibility requirement, affecting rights of needy Indians, as a

legislative-type rule, renders it ineffective so far as extinguishing rights of those otherwise within the class of beneficiaries," 415 U.S., at 236.

In *Northern California Power Agency v. Morton*, 396 F.Supp. 1187 (D.D.C. 1975), at issue was whether an agency could make informal, ad hoc and unpublished rules of procedure to govern proceedings in which the public had an interest.   Here, the Department of Interior operated a hydroelectric power generation project and sold such power to 54 electrical power companies. Interior proposed a substantial rate increase to which its customers objected; an informal and constantly changing procedural plan was devised by which the complaints so made would be decided by the agency.  The Court held, however, that the failure to conduct agency hearings pursuant to published rules of procedure violated §552.

A variety of issues based upon the provisions of the Clean Air Act were at issue in *Maryland v. Environmental Protection Agency*, 530 F.2d 215 (4th Cir. 1975).  In this case, Maryland complained that certain regulations of the EPA which allegedly applied to it had not been subjected pre-promulgation publication in the Federal Register. Finding that the challenged regulations were published in final form in the Federal Register but had not been published therein in the notice and comment phase of the process of regulation promulgation, the same were found void and unenforceable.  See also *Rowell v. Andrus*, 631 F.2d 699 (10th Cir. 1980).

At issue in *Appalachian Power Company v. Train*, 566 F.2d 451, 455 (4th

Cir. 1977), was the failure of the EPA to publish a very lengthy document named

"Development Document" in the Federal Register. This document[3] was 263 pages

long and purported to establish standards for effluent emissions. Because the

document itself constituted a substantive agency regulation which was not

published, it was held invalid:

> "[T]he Development Document is not a validly issued part of the
> regulations, because it has not been published in the Federal Register, nor
> have the procedural requisites for incorporation by reference been complied
> with. With this position we agree, and hold that 40 C.F.R., section 402.12
> is not enforceable for want of proper publication.
>
> "Any agency regulation that so directly affects pre-existing legal rights or
> obligations * * *, indeed that is 'of such a nature that knowledge of it is
> needed to keep the outside interests informed of the agency's requirements
> in respect to any subject within its competence,' is within the publication
> requirement * * * As the substance of a regulation imposing specific
> obligations upon outside interests in mandatory terms * * *, the information
> in the Development Document is required to be published in the Federal
> Register in its entirety, or, in the alternative, to be both reasonably available
> and incorporated by reference with the approval of the Director of the
> Federal Register."

See also *PPG Industries, Inc. v. Costle*, 659 F.2d 1239 (D.C.Cir. 1981).

An unpublished policy statement was at issue in *Dean v. Butz*, 428 F.Supp.

477, 480 (D.Hawaii 1977). This case involved an agency determination that

security deposits for rental housing paid by a government agency should be

considered as "income" for food stamp purposes, this determination being made

---

[3] Another related case, *Virginia Electric and Power Company v. Costle*, 566 F.2d

by an unpublished letter. In holding this agency policy void for lack of publication, the court held:

> "The Mellinger letter does not involve housekeeping operations nor adjudicatory opinions. It is a clarification of existing regulations. It, however, does have a significant impact upon a segment of the public, the members of the class here. If the monies for security deposits are counted as income to the members of the class, the class members must pay more for food stamps. * * * The effect of an increased cost for food stamps has a substantial impact upon their limited budgets. Therefore, under the Ninth Circuit's test, the regulation is of general applicability. Since the Mellinger letter was not published in the Federal Register, as required by 5 U.S.C. section 552(a)(1)(D), it is invalid."

The question before this court in *Vigil v. Andrus*, 667 F.2d 931, 938 (10th Cir. 1982), was the validity of the curtailment of a school lunch program for Indian children. Here, the Bureau of Indian Affairs administered a program whereby such lunches were provided to all Indian children regardless of need. This program was transferred to the Department of Agriculture, which provided free lunches only to the needy. The challenge made regarding the non-publication of the transfer of the program to the Department of Agriculture and consequent elimination of certain children from the program was upheld and the unpublished transfer was declared void:

> "If a substantive rule or general policy is not published, parties without actual notice cannot be adversely affected by it.

> "Therefore, we find the BIA's policy changes invalid for want of publication. If the BIA wishes to eliminate nonneedy Indian school children from the free lunch program, it must comply with its current rulemaking procedures."

446, 448 (4th Cir. 1977), describes this document.

An unpublished Social Security claims manual which directly affected entitlement to Social Security benefits was found void in *Herron v. Heckler*, 576 F.Supp. 218 (N.D.Cal. 1983). The manual in question in this case provided for the reduction or elimination of Social Security benefits in the event the beneficiary owned property valued in excess of a certain amount. The claimant's argument that the manual's provision thus limiting benefits was void for want of publication in the Federal Register met with the approval of the District Court:

> "The claims manual provisions clearly fall within the definition of 'rule' quoted above:   they are an agency statement; they are applicable prospectively to a class of SSI beneficiaries generally and to the named plaintiff particularly; and by defendants' own admission in their memoranda, they are designed to implement, interpret and/or prescribe law. Moreover, the claims manual provisions are 'rules' as the term generally has been construed by the courts: they declare policies generally binding on the affected public; they provide specific standards to regulate future actions of the affected public; and they make a substantive impact on the rights and duties of persons subject to their limitations," Id., at 230.

> "In sum, the Secretary was required, by the express terms of the APA and the 'substantial impact' principle, to notify the public and to solicit comments before she promulgated the claims manual limitations at issue here. Her failure to comply with the notice and comment provisions of the APA renders the challenged limitations void and unenforceable," Id., at 232.[4]

---

[4] This is indeed the rule in several Circuits; see *Whaley v. Schweiker*, 663 F.2d 871, 873 (9th Cir. 1981)(SSA claims manual has no legal force); *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003)(SSA manual, HALLEX, has no force and effect); *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29, 38 (3rd Cir. 1976)(manuals are not binding on agency); *United States v. Harvey*, 659 F.2d 62, 64 (5th Cir. 1981); *Gatter v. Nimmo*, 672 F.2d 343, 347 (3rd Cir. 1982)(VA manual); *Burroughs v. Hill*, 741 F.2d 1525, 1529 (7th Cir. 1984)(HUD handbook); *Fano v. O'Neill*, 806 F.2d 1262, 1264 (5th Cir. 1987)(INS Operations Manual); and *Sta-Home Home Health Agency, Inc. v. Shalala*, 34 F.3d 305, 310 (5th Cir. 1994)(Medicare manual has no force and effect as

It is thus clear from the above cited cases, representative samples of the multitude of similar cases, that an agency's failure to publish any document (regardless of how named by the agency) designed to implement or prescribe law is a void and unenforceable "rule". See *W.C. v. Bowen*, 807 F.2d 1502, 1504 (9th Cir. 1987) (substantive rules must be published); *Angle v. United States*, 709 F.2d 570, 577 (9th Cir. 1983) (non-published rules are void); *State of Ohio Dept. of Human Services v. U.S. Dept. of H.H.S.*, 862 F.2d 1228 (6th Cir. 1988); *Reich v. Manganas*, 70 F.3d 434, 437 (6th Cir. 1995)("Internal operating manuals * * * do not carry the force of law, bind the agency, or confer rights upon the regulated entity"); and *Chamber of Commerce of the United States v. O.S.H.A.*, 174 F.3d 206 (D.C.Cir. 1999)(directive void for non-compliance with APA).

IV. Necessity for Publication of Rules Found in Agency Instructions.

Within an agency, "instructions" may be promulgated and distributed to agency officers and employees informing them as to the manner and method of implementing and enforcing any particular law. If by chance these "instructions" likewise meet the definition of a "rule" as defined by §551, and if the same be "substantive" as prescribed by §552, they must be published in the Federal Register. Several cases have found such "instructions" to agency employees void for non-publication.

---

law).

It appears that one of the first cases to deal with this issue was *United States v. Morelock*, 124 F.Supp. 932 (D.Md. 1954). This case concerned an act to regulate the production of wheat, which of necessity required agriculture officials to measure the amount of acreage devoted to wheat production. To accomplish this purpose, agency "instructions" given to agency employees outlined measurement procedures and the same required some affirmative acts on the part of farmers. When suit was instituted to force some dissenting farmers to permit measurement of their wheat crops, the farmers replied that their supposed duties under the act as set forth in the unpublished "instructions" were void. The District Court agreed:

> "But there is no provision in the Act or the Regulations imposing any duty on farm operators in connection with the visits of the reporters or other representatives of the county committee. The only obligation on farm operators in that connection is set out in Paragraph II D of Instruction No. 1006. * * * This instruction was not published in the Federal Register or otherwise brought to the attention of defendants before suit. It was, therefore, not binding on them," Id., at 944.

> "As we have seen, those Instructions were not published in the Federal Register, and therefore cannot impose any affirmative duty on defendants,"Id., at 945.

During the height of the Viet Nam war, certain draft law regulations outlined a procedure whereby conscientious objectors would be inducted for civilian service. But, the operation of this procedure concerning conscientious objectors was substantially varied by the issuance of a "Letter to All State Directors" and a temporary "instruction", both of which were not published in the

Federal Register notwithstanding the fact that the same had an adverse impact upon such objectors. In *Gardiner v. Tarr*, 341 F.Supp. 422, 434 (D.D.C. 1972), upon challenge, these documents were found void as unpublished substantive rules:

> "While the pre-publication and publication sections of the Act and the implementing Executive Order do not further define what are considered to be 'Rules' and 'Regulations', it is inconceivable that policies intended to have the force and effect of the policies purporting to effect the Plaintiffs in this proceeding, may be considered anything other than 'Rules and Regulations', notwithstanding the label attached by Defendant, and may be applied to Plaintiffs or any affected registrant without having been published in a manner in accordance with the Act. Whatever Defendant has entitled these unpublished but written policies, they 'purport[s] to be an authoritative declaration of policy issued for the guidance of the [Selective Service] System's line officers * * *' Therefore, the letters and Temporary Instruction in question are as much 'regulations' as any administrative agency's standardized, enforced, and broad policy directives."

The same issue was raised in *Piercy v. Tarr*, 343 F.Supp. 1120 (N.D.Cal. 1972), which resulted in a similar holding.

The validity of an unpublished instruction affecting the food stamp program was at issue in *Aiken v. Obledo*, 442 F.Supp. 628 (E.D.Cal. 1977). While the food stamp program is federally funded and state administered, federal regulations establish the standards for eligibility. But, in this case, an indigent and eligible family was denied such assistance because of an unpublished "FNS (FS) Instruction 732-1, section 2313," which limited eligibility by a "collateral contact requirement and a 6 month rule." These limitations upon food stamp entitlement

contained in "instructions" to employees administering the program were held void for want of publication:

> "Interpretative rules ' * * * consist of administrative construction of a statutory provision on a question of law reviewable in the courts'. * * * They do not have the force of law.

> "The 'collateral contact' and 'six month' rules set forth in the instruction in question have the force of law.

> "Procedural rules are those that relate to the method of operation of the agency, while substantive rules are those which establish standards of conduct or entitlement * * *," Id., at 649.

> "Since it is undisputed that the 'collateral contact' rule was not so published, it was adopted in violation of notice and comment provisions of the APA and must be declared void and set aside," Id., at 650.

A similar problem regarding the food stamp program was raised in *Anderson v. Butz*, 550 F.2d 459 (9th Cir. 1977), which considered a different aspect of the unpublished "Food and Nutrition Service (FNS), Food Stamp (FS) Instruction 732-1," before the court in *Aiken*, supra. Here the unpublished instructions commanded that HUD rent subsidies should be considered as "income" for food stamp purposes. Finding a substantial impact upon recipients of food stamps as a consequence of the "rule" contained in the unpublished instructions, the court declared it void. See also *United States v. Shearson Lehman Bros., Inc.*, 650 F. Supp. 490, 496 (E.D. Pa. 1986); and *United States v. Riky*, 669 F. Supp. 196, 201 (N.D. Ill. 1987).

Thus, the above decisional authorities clearly shows that "instructions" given to agency personnel which command the performance of an act by a

member of the public or which limit entitlement to statutory benefits are subject to the publication requirement. If such "rules" found in agency instructions to agency personnel must be published, then likewise similar "instructions" given directly by the agency to the public must also be published on the grounds that the same similarly are "rules."

V. Necessity for Publication of Rules Contained in Forms and Manuals.

As seen from the above cases, agency "rules," especially those which are not published, can appear in a variety of documents such as manuals, letters, instructions and other items. Additionally, forms and manuals used by agencies can fall within the ambit of a "substantive rule," especially those designed to implement a law, thus necessitating publication. Several cases have considered the issue of the consequence of non-publication of such an agency form.

In *United States v. Two Hundred Thousand Dollars ($200,000) in United States Currency*, 590 F.Supp. 866 (S.D.Fla. 1984), at issue was the validity of Customs Form 4790 (Currency Transaction Report), used in the enforcement of the Currency and Foreign Transactions Reporting Act. In this case, a man named Palzer had suffered the seizure of $200,000 by Customs when he entered the country and failed to submit form 4790. In the resulting forfeiture proceedings, Palzer intervened and asserted the invalidity of the form because it constituted an agency "rule" which had not been published in the Federal Register.    In considering Palzer's claim, the court here found that regulations required the filing

of a form, although the substance and contents of the information required to be

supplied was not described in the regulations:

> "However, the regulations are incomplete in this case without the forms, because the regulations do not set forth the information a traveler will be required to furnish on the forms, specifically Form 4790," Id., at 869.

The Court found that the form itself constituted an agency "rule":

> "Interpretative rules are 'statements as to what the administrative officer thinks the statute or regulation means', * * * whereas substantive rules, such as Form 4790, are issued by an agency pursuant to statutory authority which have the force and effect of law. * * * It is also apparent that Form 4790 is not a 'general statement of policy' as would be exempted from the publication requirement under 5 U.S.C. section 553(b). That Form 4790 is a 'legislative' rule rather than an interpretive one or a general statement of policy is apparent from the fact that the form was clearly intended to implement the pertinent statute * * * and the regulation * * *; section 551(4) of the APA distinguishes agency statements designed to implement a law from those designed to interpret it," Id., at 870- 871.

Finding that the form in question was a "rule" which had not been published, the

court declared:

> "Given the scope of the information which Customs Form 4790 requires a traveler to furnish, as well as the Form's role as an implementing mechanism for the reporting regulations, Form 4790 is a substantive and implementing rule which falls within none of the acceptable exemptions under the APA and should have been published in the Federal Register," Id., at 871-872.

Another case addressing the issue of whether an agency form is likewise a

"rule" requiring publication is *United States v. Reinis*, 794 F.2d 506 (9th Cir.

1986). Here, Reinis was charged with money laundering and consequent failure to

file the C.T.R. Form 4789. In a short opinion and based upon the authority of the

opinion noted immediately above, it was held that this form was a substantive rule

which was invalid for failure of the agency to publish it in the Federal Register.

See also *United States v. Cogswell*, 637 F. Supp. 295, 298 (N.D. Cal. 1985); *United States v. Gimbel*, 830 F.2d 621, 626 (7th Cir. 1987); *United States v. Risk*, 672 F. Supp. 346, 358 (S.D. Ind. 1987), affirmed at 843 F.2d 1059 (7th Cir. 1988); *Lewis-Mota v. Sec. of Labor*, 469 F.2d 478 (2nd Cir. 1972)(directive void for non-publication); and *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000).

In *Western Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1996), the court of appeals held:

> "The Manual and Handbook are not promulgated in accordance with the procedural requirements of the Administrative Procedure Act. Neither is published in the Federal Register or the Code of Federal Regulations. See Parker v. United States, 448 F.2d 793, 797 (10th Cir. 1971), cert. denied, 405 U.S. 989 (1972). They are not subjected to notice and comment rulemaking; they are not regulations. Hi-Ridge Lumber Co. v. United States, 443 F.2d 452, 455 (9th Cir. 1971) (Manual 'does not rise to the status of a regulation')."[5]

See also *Stone Forest Industries v. United States*, 973 F.2d 1548, 1551 (Fed.Cir. 1992) (manual did not have force and effect of law); *Lumber, Prod. and Indus. Workers Log Scalers Local 2058 v. United States*, 580 F.Supp. 279, 283 (D.Or.

---

[5] The courts have held that agency manuals confer no rights; see *United States v. Horne*, 714 F.2d 206, 207 (1st Cir. 1983)(Internal Revenue Manual not codified and thus not obligatory); *United States v. Will*, 671 F.2d 963, 967 (6th Cir. 1982); *Rosenberg v. Comm.*, 450 F.2d 529, 532-33 (10th Cir. 1971); *Continental Ill. Corp. v. United States*, 727 F.Supp. 425, 429 (N.D.Ill. 1989); *First Fed. S. & L. Ass'n. of Pittsburgh v. Goldman*, 644 F.Supp. 101, 103 (W.D.Pa. 1986); *United States v. New York Telephone Co.*, 644 F.2d 953, 959, n. 10 (2nd Cir. 1981); *United States v. Arthur Andersen & Co.*, 598 F.2d 610 (2nd Cir.1979); and *United States v. Caceres*, 440 U.S. 741, 754 n. 18, 99 S.Ct. 1465

1984) (manual is "basically a large compilation of guidelines * * * [and] not a 'substantive' rule"); and *Pueblo Neighborhood Health Centers, Inc. v. U.S. Dep't. of HHS*, 720 F.2d 622, 625 (10th Cir. 1983)(manuals do not have force and effect of law). Informal agency publications are not binding authority; see *CWT Farms, Inc. v. Commissioner*, 755 F. 2d 790, 803-04 (11th Cir. 1985); *Killip v. Office of Personnel Mgt.*, 991 F.2d 1564, 1569-70 (Fed.Cir. 1993)(manual has no force and effect as law); *Loggerhead Turtle v. County Council of Volusia County*, 148 F.3d 1231, 1243 fn. 11 (11th Cir. 1998); and *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015 (D.C.Cir. 2000)(EPA "Guidance" manual imposed many duties but was a void rule since not duly promulgated).

State courts have rendered similar decisions regarding the validity of unpublished agency documents that are in fact rules via the APA. Several have dealt with this problem arising from agency instructions affecting the public. For example, in *Burke v. Children's Services Division*, 26 Or. App. 145, 552 P.2d 592 (1976), an instruction regarding the termination of welfare benefits was held void as an unpublished rule. In *Florida State University v. Dann*, 400 So.2d 1304, 1305 (Fla.App. 1981), a salary document setting forth the manner for granting merit salaries to university employees was held to be a void rule. Regarding the revocation of a state issued certificate based on an unpublished letter, the court in *McCarthy v. Dep't. of Ins. & Treasurer*, 479 So.2d 135, 137 (Fla.App. 1985), held

(1979).

that "[t]his letter was more than incipient agency policy. Since it had the effect of requiring compliance and was not adopted by the proper rulemaking process, it was invalid."

In *Ohio Dental Hygienists Assoc. v. Ohio State Dental Board*, 21 Ohio St.3d 21, 487 N.E.2d 301 (1986), an unpublished advisory opinion letter was declared to be a void rule, as was a "program bulletin" in *Detroit Base Coalition for Human Rights of Handicapped v. Dep't. of Social Services*, 431 Mich. 172, 428 N.W.2d 335, 342-43 (1988). An administrative order was held void in *Woodland Private Study Group v. State Dep't. of Environmental Protection*, 209 N.J.Super. 261, 507 A.2d 300, 302 (1986), as were a personnel memo regarding employee sick leave in *Petition of Daly*, 129 N.H. 40, 523 A.2d 52 (1986); an agency directive in *Johnson v. N.D. Workers Comp. Bureau*, 428 N.W.2d 514 (N.D. 1988); and a fee schedule in *West Virginia Chiropractic Soc., Inc. v. Merritt*, 178 W.Va. 173, 358 S.E.2d 432 (1987). See also *Comm., Dept. of Human Resources v. Haggard*, 173 Ga.App. 676, 327 S.E.2d 798 (1985)(an unpublished manual cannot be judicially noticed).

A benefits policy was determined unenforceable in *K-Mart Corp. v. State Industrial Ins. System*, 101 Nev. 12, 693 P.2d 562 (1985), and an aquifer policy suffered the same fate in *Heimbach v. Williams*, 517 N.Y.S. 2d 393 (Sup. 1987). Prison rules were declared void in *Watson v. Oregon State Penitentiary*, 90 Or.App. 85, 750 P.2d 1188 (1988), and *State ex rel Clifton v. Young*, 133 Wis.2d

193, 394 N.W.2d 769, 772-73 (1986), as were workmen compensation rules and a position paper in *Hardiman v. Dep't. of Public Welfare*, 121 Pa. Cmwlth. 120, 550 A.2d 590, 596 (1988), and *Ohio Nurses Assoc., Inc. v. State Board of Nursing Education*, 44 Ohio St.3d 73, 540 N.E.2d 1354 (1989).

In *Northwest Airlines, Inc. v. State Tax Appeal Board*, 720 P.2d 676, 678 (Mont. 1986), this airline challenged a tax apportionment formula devised by state tax authorities to compute the amount of taxes owed; finding this formula to be an unpublished rule, it was held void. In *Grier v. Kizer*, 268 Cal.Rptr. 244 (Cal.App. 1990), the court found that a statistical auditing technique affected the rights of the challenging party; because this technique was not published as a rule, it was held void. The court interestingly described this unpublished rule as "an underground regulation."

Several state cases have also dealt with the issue of whether a given form meets the requirements of an APA rule. In *Dep't. of Business Regulation v. Martin County Liquors, Inc.*, 574 So.2d 170 (Fla.App. 1991), a liquor license form was held to be a void rule due to the lack of promulgation and publication in the Florida administrative code. In *Board of Optometry v. Florida Society of Ophthalmology*, 538 So.2d 878, 888 (Fla.App. 1988), the court found that an "application form constitutes an unpublished rule and is therefore invalid." Certain forms relating to home schooling compliance were found void in *Clonlara, Inc. v. State Board of Education*, 188 Mich.App. 332, 469 N.W.2d 66 (1991). Another

manner of viewing such unpublished forms was demonstrated in *Matter of Estate of Horman*, 152 Ariz. 358, 732 P.2d 588 (1986): an unpublished form does not comply with the APA, and it is therefore not a rule. See also *Williams v. Public Service Commission of Utah*, 720 P.2d 773 (Utah 1986) (letter was a rule for APA purposes but was void because not published).

In summary, the federal APA requires all rules to be published in the Federal Register for them to have legal force and effect. Here, Circular E apparently attempts to govern the amounts required to be withheld as employment taxes. But since this circular is not promulgated as a rule and duly published, it is void.

Respectfully submitted this the ___ day of December, 2005.

Lowell H. Becraft, Jr.
Attorney for Defendant Dean
209 Lincoln Street
Huntsville, Alabama 35801
256-533-2535
becraft@hiwaay.net

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date, December 7, 2005, I hand delivered this brief to: Robert G. Davies, United States Attorney's Office, 21 East Garden Street, St. 400, Pensacola, Florida 32502.

_Lowell H. Becraft_

Lowell H. Becraft, Jr.