## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

     v.                                     Case No.3: 05 CR 25 LAC

WARD FRANKLIN DEAN,

     Defendant.

_____

## DEFENDANT'S RULE 33 MOTION FOR NEW TRIAL
## AND SUPPORTING BRIEF

Comes now the Defendant, Dr. Ward Franklin Dean, through his undersigned attorneys, and hereby moves this Honorable Court for an order granting him a new trial pursuant to Rule 33, F.R.Cr.P. Defendant Dean submits the following memorandum as grounds for a new trial.

## MEMORANDUM

**I.  Basis for motion.**

The basis for granting a new trial under Rule 33 is whether the new trial is required "in the interests of justice." There is no special requirement that there be a legally erroneous decision or error in the trial process. All that is required for a new trial is that the district court exercise its discretion in determining that a new trial should be granted in the interests of justice. No particular error needs to be highlighted. See *United States v. Vicaria*, 12 F.3d 195 (11th Cir. 1994). Dr. Dean accordingly submits that a new trial is required in the interest of justice because of improper jury instructions and prosecutorial misconduct as discussed below.

**II.   Improper Jury Instructions.**

The failure of the District Court to include in the jury instructions those requested instructions that related to Dr. Dean's theory of defense constitutes one basis for a new trial. Prior to closing arguments and the reading of the jury instructions to the jury, Dr. Dean made a request for the Court to include in the instructions two IR Code sections, 26 U.S.C. §§6001 and 6011, which were related and crucial to Dr. Dean's theory of defense and about which he testified at length. See requested Dean's requested instructions 41 and 42.

It is well settled law in the 11th Circuit that "A criminal defendant has the right to

2

have the jury instructed on [his] theory of defense, separate and apart from instructions given on the elements of the charged offense," *United State v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995), citing *United States v. Opdahl*, 930 F.2d 1530 (11th Cir. 1991). Furthermore, "A trial court may not refuse to charge the jury on a specific defense theory where the proposed instruction presents a valid defense and where there has been some evidence adduced at trial relevant to that defense," citing *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982).

In *United States v. Puche*, 350 F.3d 1137 (11th Cir. 2003), the court held that "[A] district court's refusal to give the requested instruction is reversible error only if (1) the instruction is substantially correct, (2) the instruction was not addressed in the charge actually given, and (3) the failure to give the requested instruction impaired the defendant's ability to present an effective defense." See also *United States v. Anderson*, 326 F.3d 1319, 1326 (11th Cir. 2003).

The requested instructions submitted by Dr. Dean met all three of these criteria. First, it is without question that the statutes, sections 6001 and 6011, are correct statements of the law. The request was for a quotation of the law, not a summary or interpretation of the law.

3

Second, the actual instructions given by the Court to the jury contained no reference whatsoever to either sections 6001, 6011, or the Defendant's theory of defense. Third, as a direct result of failing to give the theory of defense instructions, the jury lacked any instruction that Dean's testimony showed he relied upon actual sections of the IR Code. Consequently, it was impossible for Dr. Dean to adequately present his good-faith belief defense to the jury. Accordingly, since the theory of defense instruction was not given to the jury, the interest of justice demands that this Court order a new trial.

### B.   Improper *Cheek* Instruction.

An erroneous jury instruction requires a new trial; *United States v. Monteleone*, 257 F.3d 210, 222 (2nd Cir. 2001). Prior to the closing arguments and the reading of the jury instructions to the jury, Dr. Dean objected to the jury instructions that relate to the so-called *Cheek,* good-faith belief defense. See *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604 (1991).  There are two parts of the jury instructions the court gave that need to be addressed, and both are found on pages 14 and 15 of the final jury instructions given in this case.

The first area that deviates from the *Cheek* language is found in the statement, "If the government proves actual knowledge of the pertinent legal duty, the prosecution, without

more, has satisfied the knowledge component of the willfulness requirement." While this statement is found in *Cheek*, it does not complete the point made by the Supreme Court. This statement alone leaves the jury with the false understanding that all the prosecution has to do is show that a defendant was actually aware of the law. It does not indicate that the defendant may have a misunderstanding of the law. The Court in *Cheek* qualified this statement with:

> "But carrying this burden requires negating a defendant's claim of ignorance of the law or a claim that, because of a misunderstanding of the law, he had a good faith belief that he was not violating any of the provisions of the tax laws. This is so because one cannot be aware that the law imposes a duty on him and yet be ignorant of it, misunderstand the law, or believe that the duty does not exist. In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable," 498 U.S., at 202.

Had this entire point of the *Cheek* Court been given to the jury, it would have had to consider whether the government met it burden of completely negating Dr. Dean's good-faith belief defense.

The second aspect of the instruction that Dr. Dean believes is in error not only deviates from the *Cheek* language, it is also inconsistent with the established language

authorized by the 11th Circuit. The Court stated, "This is so even if the defendant's belief was not objectively reasonable as long as he held the belief in good faith. Nevertheless, you may consider whether the defendant's belief about the tax statutes was actually reasonable as a factor in deciding whether he held that belief in good faith."

The two sentences just quoted are diametrically opposed to one another. On the one hand, the Court instructs the jury that it may consider a belief that is not objectively reasonable. Then, almost in the same breath, the Court instructs the jury that it may determine that the belief is not reasonable. The second sentence is not found in the body of the *Cheek* decision. What is found is wholly different in practical effect.  As stated in *Cheek*:

> "In this case, if Cheek asserted that he truly believed that the Internal Revenue Code did not purport to treat wages as income, and the jury believed him, the Government would not have carried its burden to prove willfulness, however unreasonable a court might deem such a belief. Of course, in deciding whether to credit Cheek's good-faith belief claim, the jury would be free to consider any admissible evidence from any source showing that Cheek was aware of his duty to file a return and to treat wages as income, including evidence showing his awareness of the relevant provisions of the Code or regulations, of court decisions rejecting his interpretation of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions that made it plain that wages should be returned as income," 498 U.S., at 202.

The *Cheek* Court, 498 U.S. at 203-204, went on to declare it error for a court to disregard

Cheek's "understanding":

> "as incredible as such misunderstanding of and beliefs about the law might be. Of course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge."

The court in *United States. v. Morris*, 20 F.3d 1111, 1115 (11th Cir. 1994), reached the same conclusion. In *Morris,* the court stated, "Such specific intent may be negated by a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law, regardless of whether or not the belief is reasonable." Thus, it is not a question of whether the jury believes that the defendant's belief is reasonable, but a question of whether the defendant actually had the belief, as unreasonable as it may seem to the jury.

In this case, the situation is very similar to that of *Cheek*. Instead of believing that wages were not income as *Cheek* believed, Dr. Dean asked the question, "What statute made me liable for the income tax?" Based on the fact that he could not get an answer to that question, he concluded that he was not liable for the income tax and therefore not subject to the Internal Revenue Code provisions that required the filing of income tax returns. However unreasonable this belief may seem to the jury, it is not their duty to determine if it was

reasonable, but whether Dean actually held the belief. Consequently, the practical effect of the jury instruction given by the Court effectively negated any good-faith belief defense and essentially asked the jury to find Dr. Dean's belief not a valid defense because it might conclude the belief was not reasonable.

When the improper jury instruction is coupled with the "willful blindness" instruction, to which Dr. Dean also objected, the effect clearly exacerbates any efforts to present a good-faith defense. The court in *United States v. Puche*, 350 F.3d 1137, 1149 (11th Cir. 2003), addressed "willful blindness" and stated, "An instruction on deliberate ignorance is appropriate only if it is shown that the defendant was aware of a high probability of the fact in question and that the defendant 'purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.'"

In this case, a "willful blindness" instruction prevented the jury from considering whether Dean actually had a belief, resulting in an unfair trial. There is no evidence in the court record that any IRS agent, case ruling or other source ever specifically told Dr. Dean which statute made him liable. The government repeatedly assured the jury that Dr. Dean was told he was liable to pay taxes, but no evidence was ever submitted, nor was any law

produced which answered Dr. Dean's question. Accordingly, the improper instructions regarding reasonableness coupled with the willful blindness instruction guaranteed that the jury would find him guilty. The result was a denial of due process, requiring a new trial.

**III.   Prosecutorial Misconduct.**

**A.   Perjury by Prosecution Witness.**

Dr. Dean's theory of defense was that he believed he was not liable for any income tax because he was unable to find a statute which made him liable, nor could he determine the existence of Agent Jackson's authority to issue summonses.  In order to counter such a good-faith belief defense, the government had to either show that Dr. Dean's belief was not reasonable, that he did not have such a belief, or that his belief was really nothing more than a disagreement with the law which does not qualify as a defense. It is obvious from the evidence produced at the trial and from Dr. Dean's testimony that he did in fact have the belief that he was not liable for income taxes because he could not find a statute making him so liable. It is also obvious that he truly believed that Agent Jackson did not have the legal authority to issue summonses. This is true primarily because Agent Jackson repeatedly refused to provide Dr. Dean with his authority. Thus, the only counter the government could

use was to convince the jury that Dr. Dean's position was more of a disagreement with the law than a bona-fide belief. The means of accomplishing this were to allow the false testimony of Revenue Agent Jackson to stand and to use that false testimony in the closing argument while having full knowledge that it was false.

During the direct and cross examinations of Revenue Agent Jackson, he described a meeting that he had with Dr. Dean and Rick Wallstead on March 18, 2002. Mr. Jackson falsely testified that during the meeting, Dr. Dean was hostile. He used other words of similar meaning which will be revealed when the complete trial transcript is made available. He also stated that Dr. Dean refused to listen to his explanation of what the law was that required him to pay taxes. Finally he indicated that he had to call an end to the meeting because of Dr. Dean's demeanor, and Jackson threatened to call the police to have him removed. These statements were false and intended to influence the jury to believe that Dr. Dean did not have a valid belief, but rather purposefully ignored the law.

The prosecution, rather than correct the false testimony when it was revealed as being false, instead amplified it in the closing argument. On pages 43 and 44 of the official transcripts of the prosecution's rebuttal closing argument, the following is found:

18   You

19   heard Wayne Jackson tell you that the defendant wouldn't

20   listen.  The defendant was abusive and obstructive.  Well, then

21   you heard the defendant actually testified that Wayne Jackson

22   was making bold-face lies.  That's calling Wayne Jackson a

23   perjurer, because he was on the witness stand.  Well, if you

24   remember during examination, it was the defendant who admitted

25   committing perjury three times, not Wayne Jackson.  Please,

1   compare their demeanors.  Wayne Jackson versus the defendant,

2   who admitted to committing perjury.  Who are you going to

3   believe?

Through the false testimony of Wayne Jackson and the amplification of that false

testimony, the jury was clearly left with the impression that Dr. Dean was hostile, abusive,

obstructive and simply would not listen. But it was false and the government was fully aware

of its untruthfulness.

In *Carr v. Schofield*, 364 F.3d 1246, 1254 (11th Cir. 2004), the court made it clear

that "Due process is violated when the prosecution ... knowingly uses false evidence or

'allows it to go uncorrected,'" citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177

(1959). The court in *Carr* further indicated that a due process violation exists "even where

the evidence 'goes only to the credibility of the witness' because the jury's estimation of that

witness's reliability may be determinative of the defendant's guilt."

The 11th Circuit in following the Supreme Court continued to make an even tougher statement regarding the use of false testimony: "A conviction obtained by the knowing use of false or perjured testimony that reflects on the credibility of the witness, will 'be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury,'" citing *United States v. Bagley*, 473 U.S. 667, 678-679, 105 S.Ct. 3375 (1985). In making the above statement, the 11th Circuit adopted certain standards to determine if the use of false testimony required a new trial or a reversal. In *Carr*, 364 F.3d, at 1255, it stated, "'[W]here the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony,' the testimony is considered material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"

One of the elements of the crime of income tax evasion under 26 U.S.C. §7201 and of impeding the IRS under §7212 that the government must prove is willfulness. Thus, evidence of the Defendant's state of mind, more specifically whether his actions were willful, is crucial. For the government to allow false testimony to remain uncorrected and then to use that false testimony to buttress its case is a clear violation of Dr. Dean's constitutional right

to due process.

A more recent 11th Circuit case, *Ventura v. Attorney General, State of Florida*, 419 F.3d 1269, 1277 (11th Cir. 2005), even places the burden on the government to prevent such due process violations. The court in *Ventura* stated, "'If false testimony surfaces during a trial and the government has knowledge of it, ... the government has the duty to step forward and disclose.'" See also *Hall v. Director of Corrections*, 343 F.3d 976, 983-984 (9th Cir. 2003) (conviction based on false evidence was a constitutional violation of due process even when not solicited by the government, but instead allows the false evidence to go uncorrected: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence"); and *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) (the government violates a defendant's constitutional right to due process when, although not soliciting the false evidence, it allows the false evidence to remain uncorrected when it appears).  Adjusting this principle to the presence of false testimony, the standard would be, "The question is not whether the defendant would more likely than not have received a different verdict without the false testimony, but rather with

the presence of the false testimony he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

In *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763 (1972), the Court stated: "this Court made it clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice,'" and "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." See also *United States v. Noriega*, 117 F.3d 1206, 1220, 1221 (11th Cir. 1997)("Where either [the government solicits false or misleading testimony or fails to correct it], the falsehood is deemed to be material [and thus, to warrant a new trial] 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury'"); *Spence v. Johnson*, 80 F.3d 989, 996-997 (5th Cir. 1996); and *United States v. Walgren*, 885 F.2d 1417, 1427 (9th Cir. 1989).

The case of *United States v. Wallach*, 935 F.2d 445, 456 (2nd Cir. 1991), is similar to that here regarding Dr. Dean.  In both cases, instead of correcting the false testimony, the government sought to rehabilitate the witness. In doing so the prosecution consciously avoided the obvious – that its witness was not telling the truth. In reaching its conclusion, the

14

*Wallach* Court stated:

> "Whether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury. *** Where the prosecution knew or should have known about the perjury, the conviction must be set aside 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' *** Indeed, if it is established that the government knowingly permitted the introduction of false testimony reversal is 'virtually automatic.'"

See also *United States v. Monteleone*, 257 F.3d 210, 219 (2nd Cir. 2001), which relied heavily on *Wallach*, and *United States v. Damblu*, 134 F.3d 490, 493 (2nd Cir. 1998).

All of the foregoing cases follow the same principle, but the standards for applying it have been crystallized in the following cases: *United States v. Mack*, 695 F.2d 820, 822 (5th Cir. 1983); *United States v. Douglas*, 874 F2d 1145, 1159 (7th Cir. 1989) (follows the same standard as *Mack*); and *United States v. Stoddard*, 875 F.2d 1233, 1237 (6th Cir. 1989) (follows a similar standard and focuses on the second aspect of the *Mack* standard, but qualifies the third with "the prosecution knew or should have known of the falsehood").

The standard followed by these court is as follows:

1. Statements were actually false;
2. Statements were material (a highly significant factor reasonably likely to have affected the judgment of the jury); and
3. Prosecution knew they were false.

When these standards are applied in this case, it is clear that the false testimony of Jackson and the subsequent use of it in the prosecution's closing rebuttal argument violated Dr. Dean's right to due process and result in an unfair trial. Consequently, a new trial is required.

The first standard requires that the statements actually be false. Attached as Exhibit A, is a certified transcript of that March, 2002, meeting. A cursory reading of the transcript reveals the exact opposite of the trial testimony given by Agent Jackson. The transcript reveals that Dr. Dean attended the meeting with the express purpose of determining what law made him liable for the income tax, and what authority Jackson had as a revenue agent to issue summonses. Instead of Dr. Dean not listening, it was Jackson that would not cooperate. At the close of the meeting, rather than Jackson threatening to call police to remove Dr. Dean, Jackson threw the IR Code at Dr. Dean, knocking over his tape recorder. At no time during the meeting did Jackson ever inform Dr. Dean of any statute that made him liable for income tax, nor did he present his delegation of authority for issuing summonses which he claimed he had. The events of the meeting are also confirmed by an attendee, Rick Wallstead. See attached Exhibit B. Thus, it is obvious that the testimony of Jackson was false

and the first part of the standard has been met.

The second part of the standard is that the false statements were material. As was discussed above, Dr. Dean's theory of defense was that he was not liable for income taxes because he could not find a statute that made him liable. Furthermore, his questioning of Jackson, based on *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S. Ct. 1 (1947), caused Dean to believe Jackson lacked authority. Jackson's testimony, and the prosecution's later adaptation of it, painted Dr. Dean as an obstructionist who could care less what the law said. Had the jury known that Jackson misrepresented the true facts about the meeting and Dr. Dean's demeanor, it very well might have found that Dr. Dean did in fact have a good-faith belief defense and found him not guilty.

Thus, it is obvious that the testimony of Jackson was not only false, it was also material and the second part of the standard has been met.

The third part of the standard is that the prosecution knew that the testimony was false. A majority of the cases have qualified this standard in much the same way as the 11th Circuit in *Carr*, supra. In *Carr*, 364 F.3d, at 1255, the standard is stated: "'[W]here the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently

learned was false testimony,' the testimony is considered material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury'".

Here, the question is: did the government know about the false testimony? The Declaration of Rick Wallstead indicates that the government knew of the transcript that revealed the truth of the matter. The government knew of the transcript by way of Dr. Dean's website. By its own admission, the government monitored Dean's website and Mr. Wallstead's Declaration affirms that the transcript was reproduced on the website. Furthermore, the government was given a copy of the transcript at trial by Dr. Dean. Yet, rather than correct the false testimony, the government chose to continue the false impression by using the false testimony in closing arguments.

Thus, it is obvious that the testimony of Jackson was not only false and material, but the government had full knowledge of the truth through the transcripts and chose not to correct it. Accordingly, the third part of the standard has been met.

With all three parts of that standard met it is clear that Dr. Dean's right to due process was violated and a new trial is warranted.

**B.   Improper Comments by Prosecution in Closing Argument.**

18

The prosecution made numerous improper and prejudicial comments during the course of its closing arguments which rendered the trial unfair and requires a new trial.

It is well settled law that a defendant may file a motion for a new trial under Rule 33. Rule 33 authorizes the district court to grant a new trial in the interest of justice. The phrase "in the interest of justice," may be applied where there is evidence or a finding of prosecutorial misconduct. See *United States v. Brodie*, 268 F.Supp.2d 420 (E.D. Pa. 2003). The Supreme Court in *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868 (1974), held, "Improper argument by a prosecutor violates the Constitution if it renders a trial so fundamentally unfair as to deny a defendant due process." In discussing whether prosecutorial misconduct in the form of improper comments required a new trial, the Supreme Court in *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986) had this to say: "Rather the 'relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

In reaching decisions regarding prosecutorial misconduct, the court in *United States v. Mastrangelo*, 172 F.3d 288, 287 (3rd Cir. 1999), found three factors to be used in determining whether prejudice was caused by prosecutorial misconduct. They are:

(1) the scope of the comments in the context of the trial;

(2) the effect of curative instructions; and

(3) the strength of the evidence.

There were numerous examples of improper comments made by the government during the

closing arguments which satisfy all three elements of the standard set forth in *Mastrangelo*.

The first deals with the prosecution's frequent use of inflammatory and prejudicial

names and descriptions to refer to Dr. Dean. The following is a list of such statements:

On page 6 of the transcript for the closing argument is this statement:

9   The defendant is a classic

10   tax protestor, someone just like Irwin Schiff, who defies the

11   law, and someone like Irwin Schiff that should be convicted.

On page 11:

16   the defendant is being an obstructionist.

17   He's being pigheaded.

On pages 43 and 44:

23   Well, if you

24   remember during examination, it was the defendant who admitted

25   committing perjury three times, not Wayne Jackson.  Please,

1   compare their demeanors.  Wayne Jackson versus the defendant,

2   who admitted to committing perjury.  Who are you going to

3   believe?

While "[I]t is never proper to throw around such inflammatory language in a criminal

20

trial, especially when it is used to describe a defendant," see *Brodie*, 268 F.Supp.2d at 430, of particular interest is the accusations that Dr. Dean was a perjurer. Dr. Dean was not on trial for perjury and the jury was not given any instructions as to the definition of perjury. Yet, in essence, the prosecution called Dr. Dean a liar without proof or explanation.

Perjury is proscribed and defined at 18 U.S.C. §1621:

Whoever-
(1) having taken an oath before a competent tribunal, officer, or person, in any case in which law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

Dr. Dean was not on trial for perjury, yet the prosecution claimed he committed perjury three times without delineating when and where the alleged perjuries occurred. Calling Dean a perjurer, pigheaded and an obstructionist are all inflammatory remarks designed, not to help the jury reach a decision based on the facts, but to encourage them to make a decision based on emotion.

It has already been discussed that the prosecution used the false testimony of its witness Jackson to bolster its case. In *United States v. Pungitore*, 910 F.2d 1084, 1125 (3rd Cir. 1990), the court disapproved the prosecution's attempt to bolster the credibility of its law

enforcement witnesses by including facts which had no foundation in the record. In this case, the situation is even more outrageous. The prosecution used its closing argument to affirm the false testimony of Revenue Agent Jackson.

While the Court in this case repeatedly admonished that the law was to be given to the jury by the Court and only the Court, and that the purpose of the closing arguments made by the respective attorneys was to assist the jury in understanding the facts to reach a decision, the government routinely argued the law to the jury. In one particular situation, the prosecution actually misstated the law. The practical effect of such misstatements of the law was to render the trial unfair.

Page 47 of the closing argument transcript shows the following statement made by the prosecution:

    7   The good faith exception was created
    8   for people who actually paid their taxes, but made mistakes.
    9   We don't prosecute people who make mistakes.

This is a misstatement of the law and lead the jury to believe that Dr. Dean did not have a good-faith defense because he did not pay his taxes. The statement is in direct contradiction to what the Supreme Court stated in *Cheek*:

"The proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws. Congress has accordingly softened the impact of the common law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses. Thus, the Court almost 60 years ago interpreted the statutory term 'willfully' as used in the federal criminal tax statutes as carving out an exception to the traditional rule. This special treatment of criminal tax offenses is largely due to the complexity of the tax laws. In *United States v. Murdock*, 290 U.S. 389 (1933), the Court recognized that:

"'Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct,'" Id., at 199-200.

The foregoing was stated in the case of a man who did not pay his taxes because he believed that he was not required to file tax returns. The good-faith belief was refined by the Supreme Court to include someone such as Cheek and in this case Dean. The prosecution's comments that Dean had no good-faith defense because he did not pay taxes is a clear misrepresentation designed to prevent the jury from considering his good-faith belief defense. Accordingly on this basis alone, the Court should order a new trial.

In *United States v. Rich*, 326 F.Supp.2d 670, 681 (E.D. Pa. 2004), the court found, "A conviction will be reversed, therefore, if the prosecutor's remarks, taken in the context of the trial as a whole, prejudiced the defendant." The court in *Brodie*, supra, reached this

23

conclusion, "It is easier for a prosecutor, when giving a closing argument to call the

defendant names and misstate the evidence than to come to grips with the real evidence and

carefully rebut the defenses that have been presented. But the latter is the job of the Assistant

United States Attorney." 268 F.Supp.2d at 434. As a result, the *Brodie* court could not ignore

the conduct of the prosecution that may have prejudiced the defendants and reluctantly

granted a new trial.

### IV.  Conclusion.

Defendant Dr. Dean has shown at least four different grounds upon which a new trial

should be granted. He has shown that his trial was unfair and that his constitutional right to

due process was violated by (1) the Court failing to give the jury his theory of defense

instructions; (2) the giving of incorrect *Cheek* jury instructions relating to reasonableness;

(3) the government's prosecutorial misconduct in allowing its key witness to give false

testimony and then, not only failing to correct it, but to actually use it in closing arguments

to bolster its case; and (4) the government's prosecutorial misconduct through making

improper comments that were inflammatory and prejudice, as well as making misstatements

concerning the law. Pursuant to the case authority cited above, any one of these infractions

is sufficient to warrant a new trial. Taken together, it is clear that Dr. Dean's trial was unfair

and his right to due process was violated, thus mandating a new trial.

Accordingly, this Court should order that a new trial be held.

Respectfully submitted this 23rd day of December, 2005.


s/ *Lowell H. Becraft, Jr.*          s/  *Charles E. McFarland*

Lowell H. Becraft, Jr.               Charles E. McFarland

Attorney for Defendant Dean          Attorney for Defendant Dean

209 Lincoln Street                   338 Jackson Road

Huntsville, Alabama 35801            Newcastle, Kentucky 40050

256-533-2535                         Ohio Bar # 0031808

becraft@hiwaay.net                   mcfarlandc@bellsouth.net


## CERTIFICATE OF SERVICE

I hereby certify that I have on this date, December 23, 2005, electronically filed this Defendant's Rule 33 motion for a new trial with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Robert G. Davies, United States Attorney's Office, 21 East Garden Street, St. 400, Pensacola, Florida 32502.

**s/ Lowell H. Becraft, Jr.**