IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.     Case No.3: 05 CR 25 LAC

WARD FRANKLIN DEAN,

    Defendant.

_____

**DEFENDANT'S MOTION FOR RECONSIDERATION OF THE DENIAL
OF HIS RELEASE ON BOND PENDING SENTENCING**

Comes now the Defendant, Dr. Ward Franklin Dean, through his undersigned attorneys, and moves this Honorable Court to reconsider its order of December 21, 2005 denying his Motion for Release on Bond Pending Sentencing. Dean seeks a reconsideration that will result in an order releasing him from incarceration at the Escambia County Jail pending sentencing via either a personal recognizance, reasonable cash bond, home detention with a monitoring device and/or other such conditions as the Court deems adequate to insure his appearance at future court hearings.

In presenting this Motion for Reconsideration, Defendant Dean acknowledges that the Court has already deemed him a risk of flight, but believes that said decision was not based on the true facts, but rather on reasonable assumptions made by the Court. These assumptions were based on alleged and perceived facts that are inconsistent with Dr. Dean's true state of affairs. Dr. Dean further believes that upon reconsidering the motion in light of the facts as presented in this motion, memorandum and attached exhibits, the Court will reach a conclusion that he is not a flight risk and should be released pending sentencing to get his affairs, both personal and medical practice, in order and assist his patients in finding desperately needed alternative sources of medical treatment pending his incarceration.

In support of his Motion for Reconsideration Dean shows as follows:

1. Release on bond pending sentencing for a defendant convicted of a crime is governed by 18 U.S.C. §3143 (a)(2), which provides a judicial officer shall order a convicted defendant to be detained unless he finds:

   a. "By clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."

Once the defendant has met his burden of proof for the above condition, the judicial officer may release him on bond and/or upon other conditions as the court deems necessary in accordance with 18 U.S.C. §3142 (b) and(c);

2. As shown by the following memorandum and the attached declarations and letters of parties having knowledge of the facts and Dr. Dean's personal and professional affairs, it clearly and convincingly appears that Dean "is not likely to flee or pose a

danger to the safety of any other person or the community if released" via the requested bond or other conditions allowed in 18 §3143(c);

4. Defendant Dean should be released via bond, or other conditions set by the Court until sentencing on February 28, 2006, to enable him to wind down his medical practice and make arrangements for another doctor to replace him at Watson Alternative Health, Inc., which would include assisting current patients in obtaining urgent alternative medical treatment for their life-threatening conditions, and to otherwise tend to business, personal and family matters before serving his sentence in this case, which presently appears to have a Sentencing Guidelines range of 27 to 33 months.

Wherefore, Defendant Dean moves for the Court to reconsider its earlier denial of release pending sentencing and order him released upon a reasonable bond or other conditions such as home detention with monitoring pending sentencing. In support of this motion, the following memorandum is offered.

Respectfully submitted this 25th day of January, 2006.

| | |
|---|---|
| s/ *Lowell H. Becraft, Jr.* | s/ *Charles E. McFarland* |
| Lowell H. Becraft, Jr. | Charles E. McFarland |
| 209 Lincoln Street | 338 Jackson Rd. |
| Huntsville, Alabama 35801 | New Castle, Kentucky 40050 |
| 256-533-2535 | 502-845-2754 |
| becraft@hiwaay.net | mcfarlandc@bellsouth.net |

Certificate of Compliance with N.D.Fla. Local Rule 7.1 (B)

I certify that prior to the filing of this motion, I conferred with Robert Davies and was informed that the prosecution opposes this motion.

s/ *Lowell H. Becraft, Jr.*
Lowell H. Becraft, Jr.

**3**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                      Case No.3: 05 CR 25 LAC

WARD FRANKLIN DEAN,

    Defendant.

_____

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION
OF DENIAL OF BOND PENDING SENTENCING**

### I.  Introduction

Release on bond pending sentencing for a defendant convicted of a crime is governed by 18 U.S.C. §3143 (a), which provides as follows:

> (a) Release or Detention Pending Sentence. - (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

But for those convicted of violent crimes, crimes with life or death penalties, or drug offenses, the standard is stricter; see 18 U.S.C.§ 3143(a)(2).

Dr. Dean has only been convicted of tax crimes, thus via 18 U.S.C. 3143(a)(1), he need only show that he poses no risk of flight and no danger to any person or the

1

community to secure his release on bond pending sentencing. See *United States v. Majors*, 932 F.Supp. 853 (E.D.Tex. 1996)(court released drug defendant when proven that defendant was not a flight risk or danger to any person or the community); *United States v. Hooks*, 330 F.Supp.2d 1311 (M.D.Ala. 2004)(defendant released for one month to secure custody for children); and *United States v. Mitchell*, 358 F.Supp.2d 707 (E.D.Wis. 2005).

### II.  Risk of Flight.

Dr. Dean has the burden of proofing that he is not likely to flee and that he is not a danger to the safety of persons or the community. When the Court denied Dr. Dean's original Motion for Bond on December 21, 2005 (Doc #145), it listed the following factors as reasons why it reached the conclusion that Dr. Dean was a flight risk.

1. Defendant faces an inevitable term of imprisonment;
2. Defendant earned over one million dollars between 1997 and 2002;
3. Defendant is conversant in a foreign language;
4. Defendant is no stranger to international travel; and
5. Defendant's criminal actions demonstrate that he is quite capable of disrespecting and openly flouting and disobeying the rule of law.

According to the Court, the first fours reasons all make it clear that Defendant has considerable resources with which to flee. Dr. Dean will address each of these concerns and requests the Court to reconsider its denial.

### A.  Inevitable term of imprisonment.

Dr. Dean definitely faces an inevitable term of imprisonment. A reasonable estimate, based on the standards set by the Sentencing Guidelines, indicates that he will probably be sentenced to serve between 27 to 33 months. Thus, he does not qualify for the exception found in §3143(a) that is based on a recommendation of no imprisonment.

But, §3143(a) does not list an inevitable imprisonment as a factor to be considered in releasing a defendant convicted of a crime. In fact, the Bail Reform Act was designed for releasing defendants facing an inevitable period of prison time. The only condition they have to meet is proving that they are not a flight risk of a danger to the safety of others. Accordingly, the fact that Dr. Dean may face a certain time in prison is not an appropriate factor to use in denying him release pending sentencing.

### B. Substantial Earnings Over a Six Year Period.

The government presented evidence at trial which showed that Dr. Dean did earn over one millions dollars. But these earnings were for a period of time that ended four years ago. There has been no evidence presented that Dr. Dean is currently financially able to pay even his current obligations. Attached is Dr. Dean's declaration under penalty of perjury. Said affidavit states that he has no money except what he is getting through his retirement and some royalties. Any financial resources he may have had has been depleted for attorneys fees and the costs of defending himself. Thus, the Court's second concern, while a reasonable assumption without more, is in fact not a secure ground to support the conclusion that Dr. Dean is a flight risk. It was the Court's opinion that Dean apparently had large sums of money by which he could finance a trip away from the Court's jurisdiction to avoid sentencing or serving time. But, having been shown that there is no available money, the Court should reconsider its opinion and remove the factor of making over a million dollars in earning four years in the past as not being adequate ground to support a risk of flight finding.

### C. Conversant in Foreign Languages.

Under normal circumstance it may be a reasonable assumption that a person who is conversant in foreign language might be a flight risk. In this case, however, that is not true. All of the languages learned by Dr. Dean were learned as a part of his military career and in preparation for his entrance into medical school in Korea. Dr. Dean learned Spanish as a required language while he was at West Point and he learned Vietnamese in preparation for deployment to Viet Nam. These two languages were learned for military purposes and not for living or escaping to the countries where these languages are spoken. It is highly doubtful that Dr. Dean may be currently fluent in these languages since they were learned so long ago.

As his Declaration states, the third language Dr. Dean learned was for gaining admission into a medical school in Korea. Dr. Dean's testimony at trial indicated that after he first retired from the military he desired to attend medical school here in the United States, but was prevented because of his age. In his desire to attend medical school, he discovered that age was not a hindrance in Korea, but language was. So he learned enough of the Korean language to be admitted to a Korean medical school.

In light of the foregoing facts and history, the fear that Dr. Dean would attempt to escape the jurisdiction of the Court is virtually eliminated. Accordingly, the Court should reconsider its assumptions regarding the foreign languages in light of these facts.

### D. No Stranger to International Travel.

4

Once again, under normal circumstance it might be a natural assumption that a person who has international travel in his past may use that experience to flee. Such is not the case here. As evidenced through his Declaration, all of his travels were work related. He either traveled for the military, medical education or his employment. Even if he wanted to travel, he is unable to do so because he has no money.

### E.   Disrespecting and Flouting the Rule of Law.

The final reason the Court listed as grounds for concluding that Dr. Dean is a flight risk is that he, through his criminal actions, has demonstrated that he is quite capable of disrespecting and openly flouting and disobeying the rule of law. This is not an effective criteria upon which to base a conclusion as to whether a person is a risk of flight for several reasons. First, it is not set forth as a criteria in §3143. Second, the fact that a person has been convicted of a crime to which he pled not guilty and vigorously defended himself gives a very strong impression that the person is quite capable of disrespecting and openly flouting the law. Third, disrespecting and openly flouting the law gives no concrete indication that a person will actually flee the jurisdiction of the law. Finally, in this particular case, the Court's opinion of Dr. Dean may have been unfairly influenced by the unfortunate implications the government gave the Court when it filed its Motion for an Arrest Warrant (Doc #5).

There were two major concerns the government had when it filed its motion for an arrest warrant which may have negatively influenced the Court's view of Dr. Dean and its assessment of his risk of flight. The first concern dealt with the safety of the law enforcement officers. This concern arose because of the IRS CID agent's

5

misunderstanding of the circumstances surrounding the initial interview with Dr. Dean. According to Dr. Dean's understanding of the events that occurred during that initial interview with the IRS CID agents, when they requested him to show them his ID, he produced his concealed weapons permit. The reason the concealed weapons permit was used as an ID was because Dr. Dean does not always carry his driver's license on his person, especially when he is not planning on driving. But he always carries his concealed weapons permit and routinely used it as an ID which he did when he applied for a loan. This is because Dr. Dean believes that the concealed weapons permit is a more valid ID than most other forms of ID. In any event, when he was asked to present his ID by the CID agents he did not have his driver's license, but did have and produced his concealed weapons permit. It is unfortunate that his act of producing a valid ID was interpreted as an act of defiance.

The second concern dealt with Dr. Dean using his website to advocate the benefits of a drug known as GHB (the brand name is Xyrem produced by Orphan Medical). The Motion for Arrest Warrant stated the drug was illegal, giving an incorrect impression that Dr. Dean was somehow involved promoting illegal drugs. GHB may be illegally manufactured and it may be illegally obtained or abused, but it is not per se illegal. It is a controlled substance available as a prescription, although it prescription and use are severely restricted, under Schedule III. But its illicit use, manufacture or distribution is also subject to criminal penalties as a Schedule I. See the page on the FDA's website to verify this information, http://www.fda.gov/cder/drug/infopage/xyrem/xyrem. A check on the DEA's listing of drug verifies that GHB is under both Schedule I and III, see

6

http://www.deadiversion.usdoj.gov/schedules/alpha/alphabetical. Another page on the DEA's website, http://www.deadiversion.usdoj.gov/drugs_concern/ghb/ghb, gives both the legal uses and the illicit uses of the drug.

In this case, the government claimed that Dr. Dean was promoting an illegal drug, giving the incorrect impression that his disrespected and openly flouted the drug laws. However, Dr. Dean was promoting the legal use of Xyrem as an effective drug in dealing with neurotransmitters in the brain. This is a specialized filed of medicine in which Dr. Dean was well qualified by both experience and education to address. Thus, while Dr. Dean was educating the public about the positive benefits of GHB (Xyrem), the government in its motion for an arrest warrant asserted facts without knowing all of them.

These two misunderstandings on the part of the government when it filed its Motion for Arrest caused the magistrate to needlessly issue a warrant. These incomplete facts asserted in that motion probably had a severe and negative impact on the Court's view of Dr. Dean's willingness or lack thereof to appear at the sentencing hearing if released. Accordingly, not only should the Court's concern that Dr. Dean may be capable of disrespecting and flouting the law be disregarded as a criteria for denying his release, the Court should also review its basic perception of Dr. Dean in light of these errors presented by the government.

In summary, the Court has articulated five reasons why it concluded that Dr. Dean is a flight risk and that no conditions could be set which would assure that he would report for sentencing as scheduled. Two of the reasons are technically not criteria listed as the criteria in §3143 to be considered. One of these two reasons may have been based

7

on impressions generated from incorrect or misunderstood information contained in the government's Motion for Arrest. The other three reasons, while normally serious factors, are not really applicable in this case because Dr. Dean does not have the financial resource to flee even though he may have learned several foreign languages in the course of his military and medical careers and even though he may have in the past traveled internationally for his medical career. Accordingly, the Court should reconsider its denial and order Dr. Dean released pending sentencing.

### III. Factors That Mitigate Flight.

#### A. Past Experience.

From the day of his arrest until the day he was incarcerated, Dr. Dean performed all requirements imposed by the Court for his release pending trial. Most importantly he appeared at all scheduled hearings and faithfully reported to the Probation Office. There are no examples of Dr. Dean failing to appear or report. Normally, the courts look to this past experience as grounds for releasing a defendant pending sentencing or appeal, see *United States v. Price*, 611 F.Supp. 502, 503 (S.D. Fla. 1985); and *United States v. Hicks,* 611 F.Supp. 497, 498 (S.D. Fla. 1985).

#### B. Lack of Financial Resources.

As was discussed above and in his Declaration, Dr. Dean is not in the best of financial conditions. Because of his strong belief in what he was doing he sacrificed virtual all of his personal financial resources. All of his savings were depleted in his attempts to defend himself through attorney fees and other costs associated with his defense. Virtually the only source, other than current income, is the equity he may have

in the property he lives at 8799 Burning Tree Road in Pensacola. Under Florida law, however, even his access to this equity is subject to the approval of his wife Kumja Dean. Accordingly, it is virtually unavailable for use in financing a flight from the Court's jurisdiction. Because Dr. Dean has no money, other than current income, there is no appreciable risk of flight.

### C. No Incentive to Flee.

One characteristic that is sometimes considered when assessing a defendant's risk of flight is the possibility of obtaining work or employment where ever the person might choose to flee. This consideration is not a factor in Dr. Dean's case. In fact, quite the contrary, his work situation strongly mitigates against his flight. Dr. Dean is a licensed medical doctor in three states. Typically, when a medical professional, such as a doctor, dentist, veterinarian, etc. has been convicted of a crime they must go through a process conducted by their respective State Boards to determine the status of the professional's license. The net result could range any where from no action to a permanent revocation of the license. In the case of income tax related crimes there usually is some type of suspension and possibly even a revocation. Dr. Dean's entire livelihood revolves around his ability to practice medicine. Fleeing to avoid a possible but relatively short imprisonment of 27 to 33 months would virtually guarantee a revocation of his medical license. It is vitally necessary that Dr. Dean continue to work through the process to avoid a permanent revocation. Furthermore, at his age he probably would not be able to find work in any other field except medical. Thus, fleeing the jurisdiction of the Court to avoid sentencing or imprisonment is not in his best interests.

9

### D. Current Responsibilities Greatly Mitigate Flight.

Dr. Dean has two extremely important reasons for needing to be released pending sentencing. The first is the need to set his personal and family affairs in order. He has two teen-age sons, one in high school and the other in college, who need his attention in preparation for his imprisonment.  Dr. Dean's wife especially needs help in preparing for his incarceration because, in addition to preparing to handle all of the household duties and responsibilities on her own, she has been told that she need a hysterectomy operation soon.

But, perhaps with more urgency, Dr. Dean's patients need him. Dr. Dean's medical practice is a highly specialized field dealing with alternative medical treatments for patients for which the traditional medical methods have not been successful. Many of these patients depend upon Dr. Dean for their very lives. Dr. Dean needs to be released from custody to wind down his practice. In doing so he will be treating patients that need immediate help, he will be assisting the clinic, Watson Alternative Health, in finding another qualified doctor to replace him during his incarceration, and he will be assisting his patients in finding other qualified doctors to administer the alternative treatments if another doctor is not timely found for the clinic. Dr. Dean's expertise is needed in finding the patients other providers of treatment because the alternative treatments now being given are not easily explained by the patients and Dr. Dean must consult with the new doctors to assure a smooth transition. Evidence of this need is presented in the numerous letters and declarations voluntarily provided by his patients and attached as exhibits to this motion.

The medical needs of Dr. Dean's patients present an extenuating and extraordinary circumstance for releasing him pending sentencing. §3145(c) provides an avenue for possible release in extenuating and extraordinary circumstances which would make the detention of the defendant inappropriate, see *United States v. Kaquatoshs*, 651 F.Supp. 775, 778 (E.D. Wis. 2003) and *United States v. Garcia*, 340 F.3d 1013, 1015-1019 (9th Cir. 2003). Accordingly, because there are far too many factors that mitigate the risk of flight, the Court should consider both the needs of the family and the extraordinary needs of the patients and release Dr. Dean pending sentencing.

### IV.  Danger to the Safety of Persons and to the Community.

§3143 articulates only two criteria that a defendant must meet in order to be released pending sentencing. The first has been thoroughly discussed above. The second addresses whether a defendant poses a danger to the safety of any individual or to the community. The Court's order denying Dr. Dean's release did not address this question. There have, however, been no allegations or insinuations made during the course of the trial that such a danger might exist. As was discussed earlier, the government's Motion for Arrest Warrant did, however, make some implications that there was a fear for the safety of law enforcement officials because of the disclosure of a concealed weapons permit by Dr. Dean. The Motion also suggested a possible danger to the community because Dr. Dean's website, www.warddeanmd.com, exposed his tax views and allegedly promoted an illegal drug.

The safety concerns that the law enforcement officials may have had is moot since Dr. Dean surrender and/or disposed of all weapons as terms of his release on bond.

11

The concern regarding the alleged illegal drug GHB has already been fully explained above. The concern that he may be influencing the community with his tax views through his web sight is also moot. As of the time of the writing of this motion a check was made and the website is officially down, substituted with a link to www.vrp.com, which is the website for Vitamin Research Products. Accordingly, since the Court did not address the issue of danger and there is no evidence that such a danger exists, then Dr. Dean has met his burden of showing that he is not a danger to the safety of any person or to the community.

## V. Conclusion.

§3143 articulates only two criteria that a defendant must meet in order to be released pending sentencing. The defendant has the burden of proving that he is neither a risk of flight nor a danger to the safety of any person or to the community. Dr. Dean has presented substantial evidence and arguments showing that his release will not present a risk of flight. In fact, should he be released, he will be spending virtually all of his time attending to his family, especially his wife, and assisting his patients in their dire medical circumstances. The Court did not address the danger issues, but Dr. Dean has nullified any possible suggestion that a danger does exist. Accordingly, this Court should re-examine it conclusions for denying bond in light of the above facts and arguments and release Dr. Dean pending sentencing.

/ / / /

/ / / /

/ / / /

Respectfully submitted this 25th day of January, 2006.

s/ *Lowell H. Becraft, Jr.*　　　　　　　　s/ *Charles E. McFarland*
Lowell H. Becraft, Jr.　　　　　　　　　　Charles E. McFarland
209 Lincoln Street　　　　　　　　　　　　338 Jackson Rd.
Huntsville, Alabama 35801　　　　　　　　New Castle, Kentucky 40050
256-533-2535　　　　　　　　　　　　　　502-845-2754
becraft@hiwaay.net　　　　　　　　　　　mcfarlandc@bellsouth.net

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this date, January 25, 2006, electronically filed this Defendant's Motion and brief with attachments with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Robert G. Davies, United States Attorney's Office, 21 East Garden Street, St. 400, Pensacola, Florida 32502.

　　　　　　　　　　　　　　　　s/ *Lowell H. Becraft, Jr.*
　　　　　　　　　　　　　　　　Lowell H. Becraft, Jr.